## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF LORIDA

CASE:

ACCESS 4 ALL, INC. a Florida Non Profit
Corporation and DOUGLAS LONGHINI,
Individually,

       Plaintiff,

v.

CITY OF MIAMI, a Municipal corporation of
the State of Florida, and  MIAMI PARKING
AUTHORITY, a political subdivision of the
State of Florida

       Defendants.

_____/

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs, ACCESS 4 ALL, INC. and DOUGLAS LONGINI, individually and on behalf of all other similarly situated mobility-impaired individuals (hereinafter "Plaintiff"), sues, the CITY OF MIAMI and MIAM PARKING AUTHORITY for injunctive relief pursuant to 42 U.S.C. §12131, et seq. (Title II - Public Services) and 42 U.S.C. §12181, et seq. (Title III - Public Accommodations), (hereinafter referred to as ..ADA"), and as grounds alleges:

## JURISDICTION

1.     This Court has original jurisdiction over the action pursuant to 28 U.S.C. section 1331 and 1343 for Plaintiff's claims arising under 42 U.S.C. section 12131, *et. seq.*, based on Defendants violations of Title II and II of the Americans with Disabilities Act (*see also* 28 U.S.C. sections 2201 and 2201).

## PARTIES

2.      Plaintiff, DOUGLAS LONGHINI, is an individual over eighteen years of age, and is otherwise *sui juris.* Plaintiff is a member of the Not-for-Profit Corporation, Access 4 All, Incorporated.

3.      Plaintiff, ACCESS 4 ALL, INC., ("Access") is a non-profit Florida corporation, formed under the laws of the State of Florida.  Access maintains its principal office at 3200 N. Palm Aire Dr., #505, Pompano Beach, FL 33069, in the County of Broward.  Members of this organization include individuals with disabilities as defined by the ADA, and are representative of a cross-section of the disabilities to be protected from discrimination by the ADA.  The purpose of this organization is to represent the interest of its members by assuring places of public accommodation and public entities are accessible to and usable by the disables and that its members are not discriminated against because of their disabilities.

4.      The Defendant, the City of Miami is a public entity as defined by and pursuant to 42 U.S.C. section 12131, and is subject to the provisions of the ADA.

5.      The Defendant, Miami Parking Authority ("MPA") is a public entity as defined by and pursuant to 42 U.S.C. section 12131, and is subject to the provisions of the ADA

6.      Venue is properly located in the Southern District of Florida because the violations forming the causes of actions stated herein are all present in Miami-Dade County, Florida..

## INTRODUCTION

7.      On July 26, 1990, Congress enacted the Americans With Disabilities Act, 42 U.S.C. §12101, et seq. ("Americans with Disabilities Act" or "ADA").

8.      Congress found, among other things, that:

    a.  some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

    b.  historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

    c.  discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

    d.  individuals with disabilities continually encounter various forms of discrimination effects of architectural, transportation, and including outright intentional exclusion, the discriminatory communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, activities, benefits, jobs, or other opportunities; and

    e.  the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. §12101 (a) (1)- (3), (5) and (9).

9.      Congress explicitly stated that the purpose of the ADA was to:

a. provided a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

b. provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

c. invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day- to-day by people with disabilities.

10.      Congressional legislation required all public entities to evaluate their services, policies and practices, and the effects thereof, that do not or may not meet the requirements of the ADA and, to the extent modification of any such services, policies and practices is required, the public entity was required to proceed to make the necessary modifications. 42 U.S.C. §12181, 28 C.F.R. §35.105(a).  The Public entity was also required to provide an opportunity to interested persons, including individuals with disabilities, to participate in the self-evaluation process.  28 CFR §35.105(b).

11.       Pursuant to 28 C.F.R. §35 public entities were also required to adopt and publish grievance procedures providing for prompt and equitable resolution of complaints alleging any action prohibited by the ADA.

12.      Additionally, 28 C.F.R. §35.130 directs that:

a. No qualified individual with a disability shall, on the basis of disability, be excluded from participation in or denied the benefits of the services, programs, or activities of the public entity, or be subjected to discrimination by any public entity;

b. The public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities, which shall not be construed to require

an individual with a disability to accept an accommodation, aid, service, opportunity, or benefit provided under the ADA which the individual chooses not to accept.

13.     All public entities were also required to maintain in operable working condition all features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities under the ADA. 28 C.F.R. §35.133(a).   And, no individual with a disability shall, because the public entity's facilities are inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of the services, programs, or activities of the public entity or be subjected to discrimination by the public entity. 28 CFR §35.149.13.

14.     All structural changes to facilities to comply with the obligations of the ADA were to be completed as expeditiously as possible, but in no event later than January 26, 1995. 28 C.F.R. §35.105(c).

15.     The Defendant was to develop a transition plan by July 26, 1992, which was required to set forth the steps necessary to complete all necessary facility modifications, and the transition plan was required to include a schedule for the implementation of requisite curb cuts or other sloped walking areas. 28 C.F.R. §35.150(d)  The plan was also required to, at a minimum,

    a.  Identify physical obstacles in the public entity's facilities that limit the accessibility of its programs or activities to individuals with disabilities;

    b.  Describe in detail the methods that will be used to make the facilities accessible and setting forth the steps necessary to complete the changes necessary to achieve accessibility by individuals with disabilities to the defendant's services, programs, facilities, activities

and  accommodations offered  to the public;

c.  Specify  the  schedule  for  taking  the  steps  necessary  to  achieve compliance with the ADA and, if the transition plan is longer than one  year,  identify steps that will be taken during each year of the transition period; and

d.  Indicate the official responsible for implementation of the plan.

16.     The Defendant has violated the ADA and discriminated against the individual Plaintiffs and the  members of the corporate  Plaintiff organizations  by excluding  them  from participation in and denying them the benefits of Defendant's public services, programs, facilities, activities and accommodations.

17.     The Defendants are also in violation of the ADA and has discriminated against  the  individual  plaintiffs  and  the  members  of  the  corporate  Plaintiff organizations  by:

a.  failing to develop a proper transition plan and implement that plan on a timely basis;

b.  failing to designate one employee to coordinate its ADA efforts to comply with and carry out its responsibilities under the Act;

c.  maintaining  public  facilities  in  a  manner  that  is  inaccessible  to  or useable by individuals with disabilities;

d.  denying them access to, and the opportunity to participate in or benefit  from,  the  aids,  benefits,  activities,  programs, accommodations, services and facilities offered by defendant;

e.  otherwise limiting them in the enjoyment of the rights, privileges, advantages  and  opportunities  enjoyed  by  individuals  without disabilities who received defendant's aids, benefits and services ,as prohibited by 42 U.S.C. §12131, et seq.  and 28 C. .F.R. §35.130, §35.150;

f.  failing to make reasonable modifications in policies, practices and

procedures are necessary to avoid discrimination on the basis of disability;

g. failing to administer services, programs and activities in the most integrated setting appropriate to the needs of the plaintiffs;

h. excluding plaintiffs from participation in, and the benefits of, the defendant's services programs and activities as a result of defendant's facilities being inaccessible to or unusable by plaintiffs;

i. failing to operate each program, service and activity so that the programs, services and activities are readily accessible to and useable by individuals with disabilities;

j. failing to take appropriate steps to insure that communications with applicants, participants and members of the public with disabilities are as effective as communications with others without disabilities (28 C.F.R. §35.160 [a]);

k. failing to furnish appropriate auxiliary aids and services were necessary to afford individuals disabilities an equal opportunity to participate in, and enjoy the benefits of, the services, programs or activities offered by defendant to the public. (28 C.F.R. §35.160 [b] [1]);

l. failing to provide TDD's (telecommunication devices for the deaf) or equally effective telecommunication systems (28 C.F.R. §35.161);

m. failing to provide individuals with disabilities, including individuals with impaired vision or hearing, appropriate information as to the existence and location of accessible services, activities and facilities, and signage at all inaccessible entrances to each of its facilities, directing users to an accessible entrance or to a location at which they can obtain information about accessible facilities, and

n. failing to use the international symbol for accessibility at each accessible entrance to a facility (28 C.F.R. §35.163 [a] and [b]; and failing to adopt and publish grievance procedures providing for the prompt and equitable resolution of complaints alleging any actions prohibited by the ADA and the regulations thereunder and/or by failing to promptly and  equitably resolve grievances which are

filed (28 C.F.R. 2135.107 [b]).

18.     Specific, although not exclusive, examples of Defendants ADA violations and practices discriminatory to individuals with disabilities include the following:

## A. MIAMI CITY HALL VIOLATIONS

i.      Parking and Exterior Routes – Accessible parking spaces and access aisles contain slopes steeper than 1:48 violating Section 502.4 of the 2010 ADA Standards for Accessible Design

ii.     Toilet Rooms – Reflecting surface of a mirror over a lavatory or countertop is higher than 40 inches above the floor, violating Section 603.3 of the 2010 ADA Standards for Accessible Design; and Pipes below the lavatory are not insulated or otherwise configured to protect against contact, in violation of Section 606.5 of the 2010 ADA Standards for Accessible Design.

## B. CITY OF MIAMI

i.      Southwest 27th Avenue (b/t U.S.1 and Coral Way) – External routes less than 36 inches wide, violating Section 403.5.1 of the 2010 ADA Standards for Accessible Design; Cross slopes of accessible route greater than 1:48 violating 2010 ADAS Section 403.3; Absence of curb ramps where accessible route crosses curb violating Section 402.2 of the 2010 ADA Standards for Accessible Design; Numerous routes containing changes of vertical lever greater than 3 inches violating Section 303 of the 2010

ADAAG;

ii.     Downtown Area – Accessible ramps containing running slopes greater than 1:12 violating 2010 ADAS Section 405.2; Failure to include handrails on both sides of ramps with a rise higher than 6 inches violating 405.8 of the 2010 ADA Standards for Accessible Design; Accessible routes containing cross slopes greater than 3.8% violating Section 403.3 of the 2010 ADAAG

## C. **SHENANDOAH PARK**

i.      Parking and Exterior Routes – Access isles not marked to discourage parking in them in violation of 2010 ADAS Section 502.3; Numerous accessible parking spaces and access isles contain slopes steeper than 1:48 violating Section 502.4 of the 2010 ADA Standards for Accessible Design.

## D. **ROBERT KING HIGH PARK**

i.      Parking and Exterior Routes - There are no accessible routes from site arrival points (parking, passenger loading zones, public sidewalks, and transit loops) violating Section 206.2.1 of the 2010 ADA Standards; Access aisles fail to adjoin accessible routes violating Section 502.3 of the 2010 ADA Standards for Accessible Design; Cross slopes on existing accessible ramps/routes are greater than 1:48 violating 2010 ADAS Section 403.3.

ii.     Ramps & Entrance Access – Ramp landings fail to comply with 405.7 of the 2010 ADA Standards.

iii.    Tables, Counter, & Lines – There is not a clear floor space at least 30 inches wide by at least 48 inches long for a forward or parallel approach, violating

Section 904.4 of the 2010 ADA Standards.

iv.      Toilet Rooms – Coat hook is less than 15 inches or greater than 48 inches above the floor, violating Section 603.4 of the 2010 ADA Standards for Accessible Design; Pipes below several lavatories are not insulated or otherwise configured to protect against contact, in violation of Section 606.5 of the 2010 ADA Standards for Accessible Design

### E. **BAYFRONT PARK**

i.       Parking and Exterior Routes – Cross slopes on exterior accessible routes are greater than 1:48 violating 2010 ADAS Section 403.3; No accessible route to elements and spaces violating Section 206 of the 2010 ADAAG.

ii.      Ramps and Entrance Access – Several ramp landings fail to comply with 405.7 of the 2010 ADA Standards Ramp landings; Existing ramps have a rise higher than 6 inches and does not provide handrails on both sides, in violation of Section 405.8 of the 2010 ADA Standards for Accessible Design (lacks proper handrails); Handrail extensions on existing ramp violates 2010 ADA Standards for Accessible Design Section 505.10.1

iii.     Bayfront Park/Tina Hills Pavilion Seating and Benches – Wheelchair spaces are not dispersed to allow location choices and viewing angles equivalent to other seating, violating Section 221.2.3 of the 2010 ADA Standards;

iv.      Toilet Rooms - Reflecting surface of a mirror over a lavatory or countertop is higher than 40 inches above the floor, violating Section 603.3 of the 2010 ADA Standards for Accessible Design; Coat hook is less than 15 inches or

greater than 48 inches above the floor, violating Section 603.4 of the 2010 ADA Standards for Accessible Design; Lavatory lacks proper knee clearance, violating Section 306.3 of the 2010 ADA Standards; the centerline of the water closet is less than 16 inches or greater than 18 inches from the side wall or partition, violating Section 604.2 of the 2010 ADA Standards for Accessible Design; Flush control is not on the open side of the water closet, violating Section 604.6 of the 2010 ADA Standards for Accessible Design; Door is not self-closing, violating Section 604.1.1.2 of the 2010 ADA Standards, lacks pulls on both sides of the door operable with one hand and not requiring tight grasping, pinching or twisting of the wrist, in violation of Section 604.8.1.2 of the ADAS, compartment is not at least 60 inches wide, violating Section 604.8.1.1 of the 2010 ADAS

## F. <u>MORNING SIDE PARK</u>

i.   <u>Parking and Exterior Routes</u> – Several accessible spaces are not at least 8 feet wide with access aisles at least 5 feet wide, violating Section 505 of the 2010 ADA Standards for Accessible Design; Several access aisles not marked to discourage parking in them violating 2010 ADAS Section 502.3; Several accessible spaces lack signs at least 60 inches above ground that includes the ISA violating Section 502.6 of the 2010 ADA Standards for Accessible Design; Cross slopes on existing accessible ramps/routes are greater than 1:48 violating 2010 ADAS Section 403.3; Several park routes contain

changes in level greater than ¼ inch vertical violating Section 303 of the 2010 ADAAG; Accessible parking spaces and access aisles contain slopes steeper than 1:48, violating Section 502.4 of the 2010 ADA Standards for Accessible Design; Opening in and along accessible routes violate 302.2 of the 2010 ADA Standards; Several exterior accessible routes violate 2010 ADAS Section 403.3 as having slopes greater than 1:20 (lacks required edging and handrails); Running slope of the curb ramp (Morningside Watersports) is steeper than 1:12 in violation of Sections 406. And 405.2 of the 2010 ADA Standards for Accessible Design; Access aisles fail to adjoin accessible routes (Park lot 2) violating Section 502.3 of the 2010 ADA Standards for Accessible Design; Routes in parking lot 2 are not at least 36 inches wide violating Section 403.1.1 of the 2010 ADA Standards for Accessible Design;

ii.    Restroom Ramps & Entrance – Ramps contain running slopes greater than 1:12 violating 2010 ADAS Section 405.2

iii.   Seating and Benches – At least 5% but no fewer than one, of the seating and standing spaces accessible for people who use wheelchairs are not provided, violating Section 226.1 of the 2010 ADA Standards; the route to accessible seating is not at least 36 inches wide in violation of 403.5.1 of the 2010 ADA Standards for Accessible Design; Accessible seating is not properly dispersed violating Section 226 of the 2010 ADAAG; Exercise equipment lacks proper CFS violating Sections 1004 and 236 of the 2010 ADAAG

iv.  <u>Toilet Rooms</u> – There is no accessible route to the toilet room violating section 206.4 of the 2010 ADAS; Hand dryer or towel dispenser fail to comply with Section 308.2 of the 2010 ADAS; Side grab bar fails to comply with Section 604.5 of the 2010 ADA Standards; Rear grab bar fails to comply with Section 604.5 of the 2010 ADA Standards;

v.  <u>Additional Elements</u> – Drinking fountain lacks clear floor space of at least 30 inches wide by at least 48 inches long centered, in violation of Section 602.2 of the 2010 ADA Standards for Accessible Design;

vi.  <u>Play Areas</u> – Accessible route to the entrance of the play area fails to comply with Section 206 of the 2010 ADA Standards for Accessible Design

## G. <u>ATHALIE PARK</u>

i.  <u>Parking and Exterior Routes</u> – There are no accessible routes from site arrival points (parking, passenger loading zones, public sidewalks, and transit loops) violating Section 206.2.1 of the 2010 ADA Standards; Several accessible spaces are not at least 8 feet wide with access aisles at least 5 feet wide, violating Section 505 of the 2010 ADA Standards for Accessible Design; Access aisles fail to adjoin accessible routes violating Section 502.3 of the 2010 ADA Standards for Accessible Design; Accessible spaces are not located on the nearest most direct accessible route to accessible entrance(s) in violation of Section 208.3.1 of the 2010 ADA Standards for Accessible Design; Several exterior accessible routes violate 2010 ADAS Section 403.3 as having slopes greater than 1:20 (lacks required edging and handrails);

Cross slopes on existing accessible ramps/routes are greater than 1:48 violating 2010 ADAS Section 403.3; Several park routes contain changes in level greater than ¼ inch vertical violating Section 303 of the 2010 ADAAG; Courts not located on an accessible route violating Section 206 of the 2010 ADAAG;

ii.  Ramps and Entrance Access - Several ramp landings fail to comply with 405.7 of the 2010 ADA Standards Ramp landings; Existing ramps have a rise higher than 6 inches and does not provide handrails on both sides, in violation of Section 405.8 of the 2010 ADA Standards for Accessible Design (lacks proper handrails);

iii.  Seating and Benches - At least 5% but no fewer than one, of the seating and standing spaces accessible for people who use wheelchairs are not provided, violating Section 226.1 of the 2010 ADA Standards; Accessible surface fails to provided CFS and clearances as required by Section 902.4.1 of the 2010 ADA Standards for Accessible Design; Bench lacks components required by Section 903 of the 2010 ADA Standards;

iv.  Toilet Rooms - There is no accessible route to the toilet room violating section 206.4 of the 2010 ADAS; Door is not equipped with hardware operable with one hand and no tight grasping, pinching or twisting of the wrist, in violation of Section 404.2.7 of the 2010 ADA Standards; the centerline of the water closet is less than 16 inches or greater than 18 inches from the side wall or partition, violating Section 604.2 of the 2010 ADA

Standards for Accessible Design; Proper clearance around the water closet is not provided violating Section 604.3.1 of the 2010 ADA Standards for Accessible Design; Toilet paper dispenser is located less than 7 inches or greater than 9 inches from the front of the water closet to the centerline of the dispenser, violating 604.7 of the 2010 ADA Standards

## H. EATON PARK

i.  Parking and Exterior Routes – Parking for the public does not provide an adequate number of accessible spaces, violating Section 208.2 of the 2010 ADA Standards for Accessible Design; Access aisles fail to adjoin accessible routes, violating Section 502.3 of the 2010 ADA Standards for Accessible Design; Cross slopes on existing accessible ramps/routes are greater than 1:48 violating 2010 ADAS Section 403.3; Park Routes contain changes of vertical level greater than ½ inch violating Section 303 of the 2010 ADAAG; Courts not located on accessible route violating 206 of the 2010 ADAAG;

ii.  Ramps and Entrance – Rams contain running slopes greater than 1:12 violating 2010 ADAS Section 405.2; Inaccessible entrances lack signs indicating the location of the nearest accessible entrance, violating Section 216.6 of the 2010 ADA Standards for Accessible Design; Maneuvering clearance violates Section 404.2.4 of the 2010 ADA Standards;

iii.  Seating and Benches - At least 5% but no fewer than one, of the seating and standing spaces accessible for people who use wheelchairs are not provided, violating Section 226.1 of the 2010 ADA Standards; Accessible surface fails

to provided CFS and clearances as required by Section 902.4.1 of the 2010
ADA Standards for Accessible Design

## I. LEGION PARK

i.  Parking and Exterior Routes – Numerous accessible parking spaces and
access isles contain slopes steeper than 1:48 violating Section 502.4 of the
2010 ADA Standards for Accessible Design; Exterior accessible route is not
at least 36 inches wide in violation of 403.5.1 of the 2010 ADA Standards
for Accessible Design; Running slopes on exterior accessible routes is
greater than 1:20 violating Section 403.3 of the 2010 ADAS; Cross slopes
on existing accessible ramps/routes are greater than 1:48 violating 2010
ADAS Section 403.3; No accessible route to waterfront spaces and elements
violating Section 206 of the 2010 ADAAG; No accessible route to exercise
equipment violating Section 206 of the 2010 ADAAG; No accessible route
to dog park in violation of Section 206 of the 2010 ADAAG'

ii.  Ramp and Entrance Access – Ramps contain running slopes greater than 1:12
violating Section 405.2 of the 2010 ADAS; Ramp landings fail to comply
with 405.7 of the 2010 ADA Standards;

iii.  Seating and Benches - At least 5% but no fewer than one, of the seating and
standing spaces accessible for people who use wheelchairs are not provided'

iv.  Toilet Rooms – Public restrooms are provided with no accessible toilet room,
violating Section 213.2 of the 2010 ADA Standards for Accessible Design;
Restrooms violate section 604 of the 2010 ADAAG

### J. **MIAMI PARKING AUTHORITY**

i.      <u>Lot/Spaces 40129</u> – Access aisles fail to adjoin accessible routes in violation of Section 502.3 of the 2010 ADA Standards for Accessible Design;

ii.     <u>Lot 19, Section 4</u> – Accessible parking spaces and access aisles contain slopes steeper than 1:48 violating Section 502.4 of the 2010 ADA Standards for Accessible Design; Access aisles fail to adjoin accessible routes in violation of Section 502.3 of the 2010 ADA Standards for Accessible Design;

iii.    <u>Chopin Plaza</u> – Accessible spaces are not at least 8 feet wide with access aisles at least 5 feet wide, violating Section 505 of the 2010 ADA Standards for Accessible Design; Access aisles fail to adjoin accessible routes in violation of Section 502.3 of the 2010 ADA Standards for Accessible Design;

iv.     <u>Lot/Spaces 40131</u> - Accessible parking spaces and access aisles contain slopes steeper than 1:48 violating Section 502.4 of the 2010 ADA Standards for Accessible Design; Access aisles fail to adjoin accessible routes in violation of Section 502.3 of the 2010 ADA Standards for Accessible Design; Cross slope on exterior accessible routes are greater than 1:48 violating Section 403.3 of the 2010 ADAS; Curb ramp contains counter slope greater than 5% violating Section 405.2 of the 2010 ADAAG;

v.      <u>Lot 42 - Routes</u> – There are no accessible routes from site arrival points (parking, passenger loading zones, public sidewalks, and transit loops)

violating Section 206.2.1 of the 2010 ADA Standards; Parking for the public does not provide an adequate number of accessible spaces, violating Section 208.2 of the 2010 ADA Standards for Accessible Design;

vi. <u>Lot/Space location 40207</u> - Accessible spaces are not at least 8 feet wide with access aisles at least 5 feet wide, violating Section 505 of the 2010 ADA Standards for Accessible Design; Accessible route is not at least 36 inches wide violating Section 403.5.1  of the 2010 ADA Standards for Accessible Design;

vii. <u>Lot/Space location 40911</u> - Accessible spaces are not at least 8 feet wide with access aisles at least 5 feet wide, violating Section 505 of the 2010 ADA Standards for Accessible Design;

viii. <u>Lot/Space location 40420</u> - Accessible spaces are not at least 8 feet wide with access aisles at least 5 feet wide, violating Section 505 of the 2010 ADA Standards for Accessible Design;

ix. <u>Lot 31</u> - Accessible parking spaces and access aisles contain slopes steeper than 1:48 violating Section 502.4 of the 2010 ADA Standards for Accessible Design; Cross slope on exterior accessible routes are greater than 1:48 violating Section 403.3 of the 2010 ADAS; Ramps contain running slopes greater than 1:12 violating 2010 ADAS Section 405.2

## K. SHAKE-A-LEG EXTERIOR WALKWAYS

i. There are no accessible routes from site arrival points (parking, passenger loading zones, public sidewalks, and transit loops) violating Section 206.2.1

of the 2010 ADA Standards; Access aisles fail to adjoin accessible routes in violation of Section 502.3 of the 2010 ADA Standards for Accessible Design; Cross slope on exterior accessible routes are greater than 1:48 violating Section 403.3 of the 2010 ADAS; Route contains changes of level greater than 1 inch in places and greater than 2 inches in others vertical violating Section 303 of the 2010 ADAAG; Ramp landings fail to comply with 405.7 of the 2010 ADA Standards.

19.     The violations set forth above relating to the City of Miami and various parks are just a sample of the numerous violations resulting in the discrimination of the disabled found throughout the City as a consequence of having no plan, a poor plan, and/or a complete failure to implement a plan.  These alleged violations are in no way an all-inclusive list of such violations

20.     As set forth above, the individual plaintiff and the corporate plaintiffs' members have been denied access to, and have been denied the benefits of, the services, programs, facilities, activities and accommodations offered by defendant, and have otherwise been discriminated against and damaged by defendant as a result of its discriminatory practices and ADA violations set forth above.  In addition to the individual plaintiff's claims asserted herein, similar claims are also asserted on behalf of Access, and their other members as the claims do not require participation of each individual member.

21.     Access and its members have suffered and will continue to suffer direct and indirect injury as a result of the Defendants discrimination until the Defendants are

compelled to comply with the requirements of the ADA.  Plaintiffs have attempted to participate in and take advantage of Defendants' facilities, but were unable to fully and safely do so due to Defendants' lack of ADA compliance.

22.     Access and its members, including Longhini, continue to desire to use the Defendants' facilities and continue to be discriminated against due to the Defendants' continued lack of ADA and Rehabilitation compliance.   Access has also been discriminated against because of its association with its members and their claims.

23.     Access and Longhini have a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to the properties as described but not necessarily limited to the allegations in paragraph 18 of this Complaint.  Plaintiffs have reasonable grounds to believe that they will continue to be subject to discrimination in violation of the law by the Defendants.

24.     Plaintiffs desire to use the facilities named herein, not only to avail themselves of the goods and services offered at the properties, but assure themselves that these properties are in compliance with the ADA and the Rehabilitation Act so that eh and all others similarly situated will have full and equal enjoyment of the facilities without fear of discrimination.

25.     Plaintiffs have been obligated to retain undersigned counsel for the filing and prosecution of this action, and have agreed to pay their counsel reasonable attorneys' fees, including costs and expenses, incurred in this action.  Plaintiffs are entitled to recover those attorneys' fees, costs and expenses from defendant pursuant to 42 U.S.C. §12205 adopts and re-alleges the allegations set forth in paragraphs 1 through 18 above

as though fully set forth herein.

26.      Pursuant to 42 U.S.C. §§12133 and 12188, 29 U.S.C. §794a, and 49 U.S.C. §2000e, this Court is provided authority to grant plaintiffs injunctive relief including an order to alter the subject premises, facilities, services, activities, programs and accommodations to make them accessible to and useable by individuals with disabilities to the extent required by the ADA, and closing all premises and facilities, and discontinuing all non-complying services, activities programs and accommodations until the requisite modifications are completed.

**WHEREFORE**, Plaintiffs respectfully request the Court to issue a permanent injunction enjoining the defendant from continuing its discriminatory practices, ordering the defendant to alter and modify the subject premises, facilities, services, activities, programs and accommodations as appropriate to comply with the ADA, closing the subject premises and facilities and discontinuing all non-complying services, activities, programs and accommodations until the requisite completed, and awarding plaintiffs their attorney's fees, costs and expenses incurred in this action,

        Dated: October 12, 2023.

                        **WICKHORST LAW**
                        800 Brickell Ave., Suite 1205
                        Miami, Florida 33130
                        Telephone: (305)728-2181
                        Email: george@wickhorstlaw.com
                        Secondary: paralegal@wickhorstlaw.com

                        BY:   George W. Wickhorst, III
                               GEORGE W. WICKHORST, III
                               Florida Bar No.: 48825